**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STEVEN M. DAVIS,<br><br>          Plaintiff,<br><br>     v.<br><br>COINBASE, INC. and COINBASE GLOBAL, INC.,<br><br>          Defendants. | Civil Action No.: 25-15201<br><br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is the motion of defendants Coinbase, Inc. and Coinbase Global, Inc. (collectively "Coinbase" or "Defendants") to compel arbitration of this dispute. ECF No. 13; *see also* ECF No. 13-1 ("Br."); ECF No. 1 ("Complaint" or "Compl."). Plaintiff Steven M. Davis ("Plaintiff") opposed the motion, ECF No. 16 ("Opp."), and Defendants replied. ECF No. 17 ("Reply"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' motion to compel arbitration is granted and the case is stayed pending arbitration.

## I.    BACKGROUND

Plaintiff opened a Coinbase account in April 2021. Compl. ¶ 23. In November 2022, he deposited approximately half of one bitcoin into a Coinbase "Wallet." *Id.* ¶ 24. Plaintiff alleges that he subsequently lost access to his Coinbase Wallet in June 2024 when he got a new phone. *Id.* ¶ 25. Despite filing a formal complaint with Coinbase, and although Coinbase "acknowledged his account" and indicated that it would provide him access to the account, Plaintiff asserts that the company then reneged and has refused to do so. *Id.* ¶¶ 6, 27–28. He alleges that the failure to provide him with access to his bitcoin constituted a breach of an agreement whereby he "would

1

deposit property into a Coinbase Wallet and [Defendants] would provide access to [his] property." *Id.* ¶¶ 53, 57.

Although unspecified in the Complaint, Defendants respond that this "agreement" is either the Coinbase User Agreement or the Coinbase Wallet Terms of Service (the "Coinbase Agreements"). Br. at 11–13. At all relevant times, the Coinbase Agreements contained arbitration provisions providing that all disputes arising out of or relating to the use of Coinbase's services would be subject to binding arbitration before the American Arbitration Association ("AAA") pursuant to its rules for arbitration of consumer-related disputes. *See* ECF No. 13-2, Ex. D at 4–5; *id.*, Ex. H, App'x 5.

Indeed, Plaintiff attempted to resolve the dispute over access to his account in arbitration before the AAA in September 2024. Compl. ¶ 29; *see also* ECF No. 13-3, Exs. 1–3. However, he did not include the correct arbitration provision with his filing. Instead, Plaintiff submitted with his arbitration demand a copy of a Coinbase arbitration provision that governed disputes by individuals who were applying to work for or had been hired by Coinbase. ECF No. 13-3, Ex. 4 at 1 ("By submitting your application, you are agreeing to this Arbitration Agreement . . . ."); *id.* ("This Arbitration Agreement . . . applies to all claims or controversies . . . arising out of or related to . . . your application and selection for employment, and employment and termination of employment (if you are hired) . . . ."); *id.* at 2 ("The location of the arbitration proceeding shall take place in the county where you applied for a job or are/were employed (if hired) . . . ."). That provision also did not designate the AAA as the arbitration administrator. *Id.* at 1.

In November 2024, the AAA issued a letter to Plaintiff and Coinbase confirming that it had received Plaintiff's demand for arbitration. *Id.*, Ex. 6 at 1. It noted, however, that "the contract clause providing for arbitration does not designate the [AAA] as the administering agency." *Id.*

2

Nevertheless, the AAA offered to administer the arbitration and gave the parties one week to provide written consent to proceed before the AAA.  *Id*.  Coinbase did not timely consent, and the AAA administratively closed the case.  *Id.*, Ex. 7.

Approximately one year after Coinbase allegedly "refused to agree to arbitrate," Compl. ¶ 29, Plaintiff initiated this action.  He asserts three claims:  (1) violation of the Electronic Fund Transfer Act of 1978, 15 U.S.C. § 1693; (2) violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2; and (3) breach of contract.  *Id.* ¶¶ 35–58.  In response, Coinbase moved to compel arbitration.  ECF No. 13.

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") reflects the strong federal policy in favor of arbitration and "places arbitration agreements on equal footing with all other contracts." *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).  Under the FAA, courts "compel arbitration of claims covered by a written, enforceable arbitration agreement." *Id.* (citing 9 U.S.C. §§ 3, 4).  Yet despite the strong presumption of arbitrability, "[a]rbitration is strictly a matter of contract" and is thus governed by state law.  *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 441, 444 (3d Cir. 1999) ("If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so."). Accordingly, when deciding whether to compel arbitration under the FAA, the Court must determine "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (citation omitted).

## III.    DISCUSSION

3

Coinbase asserts that Plaintiff entered into a valid agreement to arbitrate and that the claims at issue here are subject to that agreement, especially given that Plaintiff asserts a breach of contract claim.  Br. at 11–13.  Although Plaintiff argues that the arbitration agreement may be invalid, Opp. at 12–13, his primary argument is that Coinbase waived its right to arbitrate by refusing to participate in his previously filed arbitration.  *Id.* at 7–11.  Coinbase responds that there is no basis to find a waiver, as Plaintiff failed to properly initiate that arbitration with the AAA.  Reply at 2–8.

**A.      The Arbitration Agreement Is Enforceable and Governs the Dispute**

Plaintiff is bound by the arbitration provisions contained in the Coinbase Agreements and his claims are subject to those provisions.

### i.      The Rule 12(b)(6) Standard Applies

In determining whether a valid arbitration agreement exists between the parties, the Court must first decide whether to apply the Rule 12(b)(6) or Rule 56 standard of review.  *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015).  The Court will review a motion to compel arbitration under the Rule 12(b)(6) standard "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause.'"  *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (citation omitted).  Here, Plaintiff sues for breach of contract. Compl. ¶¶ 52–58.  Because that contract—no matter which of the Coinbase Agreements he is referring to—contains an arbitration clause, the "affirmative defense of arbitrability" is "apparent from the face of the complaint and the documents relied upon," and thus the Rule 12(b)(6) standard applies.  *Sanford*, 618 F. App'x at 117–18.

### ii.      Plaintiff Is Bound by the Arbitration Provisions

Plaintiff is bound by the arbitration provisions in the Coinbase Agreements.  He brings a breach of contract claim, which necessarily implies the existence of a valid agreement between the parties.  *Stephens v. Equifax, Inc.*, No. 22-1940, 2023 WL 8531833, at *3 (D.N.J. Feb. 24, 2023).  Specifically, he asserts that the parties entered into an agreement whereby he "would deposit property into a Coinbase Wallet and [Defendants] would provide access to [his] property."  Compl. ¶ 53.  Although it is unclear which of the Coinbase Agreements he is referencing, both contain arbitration provisions.  *See* ECF No. 13-2, Ex. D at 4–5; *id.*, Ex. H, App'x 5.  Either way, "having elected to proceed under a claim for breach of the [agreement]," Plaintiff "is bound by its terms, including the arbitration provision."  *Stephens*, 2023 WL 8531833, at *3 (quoting *Sanford*, 618 F. App'x at 118).  Notwithstanding his assertions that he does not recall how he assented to the terms, Opp. at 12–13, he cannot "claim the benefit of the contract and simultaneously avoid" the arbitration provision contained therein.  *Sanford*, 618 F. App'x at 118; *see also Salerno Med. Assocs., LLP v. Riverside Med. Mgmt., LLC*, 542 F. Supp. 3d 268, 280 (D.N.J. 2021) ("[A] party cannot, with one hand, rely on a contract as the basis for its claims, and with another, repudiate that contract's arbitration clause."); *Stephens*, 2023 WL 8531833, at *3 & n.2 (enforcing an arbitration provision despite the plaintiff's arguments that the provision was inconspicuous and that he did not read the terms).  Moreover, "clickwrap" agreements like those at issue here—which require a user to accept terms and conditions before using an online service by clicking on a dialog box—are "routinely enforced" by courts in New Jersey.[1]  *See Palmeri v. Hilltop Sec., Inc.*, No.

---

[1] Plaintiff additionally argues that the arbitration provisions may be unenforceable because Coinbase may not have required him to "scroll through the entirety of the arbitration and jury trial waiver provisions" before clicking the accept button.  Opp. at 12–13.  He has not provided legal authority showing that this is necessary in a clickwrap agreement.  Indeed, the case he relies on for this assertion did not involve a clickwrap agreement but rather an interactive telephone voice-response system that directed callers to terms that were only accessible via the internet.  *See James v. Glob. TelLink Corp*, 852 F.3d 262, 267–68 (3d Cir. 2017).  The Court is therefore unpersuaded

22-5588, 2026 WL 375962, at *8 (D.N.J. Feb. 11, 2026).  Accordingly, Plaintiff is bound by the arbitration provisions contained in the Coinbase Agreements.

### iii.    The Dispute Falls Within the Arbitration Provisions

Plaintiff does not dispute that his claims would be subject to the arbitration provisions. The Coinbase Agreements broadly cover disputes arising out of or relating to the use of Coinbase's services.  *See* ECF No. 13-2, Ex. D at 4–5 (stating that "any claim you have with us relating to, arising out of, or in any way in connection with our Terms, us, or our services" "shall be finally settled in binding arbitration"); *id.*, Ex. H, App'x 5 § 1.1 (stating that "any dispute, claim, [or] disagreements arising out of or relating in any way to your access to or use of the Services or use of the Coinbase Site" shall be subject to binding arbitration).  Plaintiff's claims all arise from services offered by Coinbase—namely, his use of a Coinbase account and Coinbase Wallet to store bitcoin.  *See generally* Compl.  Accordingly, his claims are subject to the arbitration provisions. *See Stephens*, 2023 WL 8531833, at *4 (finding that the plaintiff's statutory and contract claims fell within the scope of the arbitration provisions because they arose out of his activity on his account with the defendant).

### B.    Coinbase Did Not Waive Its Right to Arbitrate

Plaintiff's primary argument in resisting arbitration is that Coinbase waived its right to arbitrate by choosing not to participate in his previously filed arbitration. Opp. at 7–11.  Coinbase responds that Plaintiff never properly initiated that arbitration as he provided the incorrect

---

by Plaintiff's argument.  *Cf. Romanov v. Microsoft Corp.*, No. 21-3564, 2021 WL 3486938, at *3 n.7 (D.N.J. Aug. 9, 2021) (emphasizing that a clickwrap agreement must only put a user on "reasonable notice" that it contains an arbitration provision (citation omitted)).  Further, several other courts, including a New Jersey state court, have enforced Coinbase's arbitration provisions. *See Davila v. Coinbase*, No. ESX-L-5485-23 (N.J. Sup. Ct. Oct. 7, 2024); *Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946 (N.D. Cal. 2023); *Kattula v. Coinbase Glob., Inc.*, No. 22-3250, 2023 WL 4373385 (N.D. Ga. July 6, 2023).

arbitration provision to the AAA.  Reply at 2–4.  Further, it contends that it did not engage in any sustained, active litigation conduct to implicitly waive its right to arbitrate.  *Id.* at 4–7.

Waiver of a contractual right to arbitrate occurs "where a party has 'intentional[ly] relinquish[ed] or abandon[ed]'" that right.  *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 339 (3d Cir. 2023) (alterations in original) (quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022)).  In determining "whether waiver has occurred, a 'court focuses on the actions of the p[arty] who held the right.'"  *Id.* (alteration in original) (quoting *Morgan*, 596 U.S. at 417).  The Court must consider the "circumstances and context of each case," including "the timeliness of the arbitration request, the extent of the movant's merits-based arguments up to that point, and its participation in discovery."  *Hejamadi v. Midland Funding, LLC*, No. 18-13203, 2024 WL 3159316, at *5 (D.N.J. June 25, 2024) (citation omitted).

Plaintiff has not met his burden of showing that Coinbase waived its right to arbitrate.  *See id.* at *3 (noting that the burden rests with the party resisting arbitration to show a waiver).  The first substantive motion filed by Coinbase was the present motion to compel arbitration, ECF No. 13, and thus its litigation conduct before this Court does not constitute a waiver.[2]  *See Coppola v. Am. Heritage Fed. Credit Union*, No. 25-6324, 2026 WL 688276, at *3 (E.D. Pa. Mar. 11, 2026) (finding that the defendant "did not litigate in this court in ways that appear to be inconsistent with a desire to arbitrate" as it "swiftly moved to compel arbitration").  Coinbase's "refusal" to participate in Plaintiff's earlier-filed arbitration likewise does not constitute a waiver.  Plaintiff

---

[2] For similar reasons, Plaintiff's argument that Coinbase is barred by the doctrine of judicial estoppel from seeking arbitration lacks merit. Opp. at 10–11. Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citation omitted). Notwithstanding that Coinbase declined to participate in the improperly filed prior arbitration, in this litigation it has taken the sole position that it seeks to compel arbitration.

never properly initiated the arbitration under the AAA consumer rules, which required that he provide a "copy of the arbitration agreement contained in the contract" between the parties, *see* ECF No. 17-1, Ex. 1 ("AAA Consumer Rules") R-2(a)(2), as he submitted an unrelated arbitration provision for Coinbase job applicants and employees. *See* ECF No. 13-3, Ex. 4. Coinbase subsequently declined to consent to proceed in that action, and the matter was closed. *See id.*, Ex. 7 (stating that the parties were previously "notified that the [AAA] filing requirements for the . . . matter have not been met"). That Plaintiff failed to properly open the arbitration in the first place renders distinguishable the cases he cites to argue that Coinbase "refused to cooperate" with those proceedings. *See Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1198–201 (9th Cir. 2003) (agreeing that a party had defaulted in arbitration by failing to pre-pay costs where the parties had entered into a written agreement with the arbitration administrator and scheduled two days of arbitration hearings); *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1288–89, 1294–95 (10th Cir. 2015) (finding that the party who had moved to compel arbitration defaulted by failing to pay his share of the arbitration filing fee). Finally, although Plaintiff faults Coinbase for not correcting his mistake, Opp. at 8–9, the AAA rules placed the burden on him as the filing party to properly initiate the action. *See* AAA Consumer Rule R-2(a). Therefore, neither Coinbase's conduct in response to the prior arbitration filing[3] nor its conduct before this Court constitutes a waiver of its right to arbitrate.

---

[3] Plaintiff seeks limited discovery into "the administrative records and internal communications regarding Coinbase's refusal to participate in the . . . arbitration initiated by Plaintiff." Opp. at 12. Plaintiff does not explain how this information is relevant to analyzing whether Coinbase waived its right to arbitrate. Indeed, in determining whether a party has committed a waiver, courts do not focus on a party's internal decision-making processes but rather its litigation conduct. *See, e.g.*, *Redensky v. Verizon Commc'ns, Inc.*, No. 23-1579, 2024 WL 4494696, at *3 (M.D. Pa. Oct. 15, 2024) (rejecting the plaintiff's argument that the defendant waived its right to arbitrate when the defendant promptly moved to compel arbitration, had not propounded discovery requests on the plaintiff, and had not engaged in litigation on the merits).

### C.    Claims Against Coinbase Global, Inc. Must Also Be Arbitrated

Coinbase asserts that Defendant Coinbase, Inc. is a wholly owned subsidiary of Defendant Coinbase Global, Inc.  ECF No. 13-2 ¶ 4.  Coinbase Global, Inc. does not provide services directly to consumers and has no business relationship with Plaintiff other than through its subsidiaries. *Id*.  And "where the claims against both a parent and a subsidiary arise out of the same underlying facts and are 'inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement.'"  *J.E.D. Res., Inc. v. Alea N. Am. Ins. Co.*, No. 07-157, 2007 WL 9812918, at *3 (E.D. Pa. July 26, 2007) (quoting *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320–21 (4th Cir. 1988)).  Indeed, it would make little sense to allow a plaintiff who "is obligated to arbitrate its disputes with a subsidiary . . . to sue the parent directly" as that would frustrate the federal policy favoring arbitration.  *Sarl v. A.M. Todd Co.*, No. 07-2727, 2008 WL 724607, at *10 (E.D. Pa. Mar. 18, 2008).  Moreover, Plaintiff does not argue that the claims against Coinbase Global, Inc. should remain in litigation if the Court compels arbitration based on his agreements with Coinbase, Inc. *See generally* Opp.  Therefore, the Court will grant the motion to compel as to both entities.

## IV.    CONCLUSION

Accordingly, for the reasons stated above, **IT IS** on this 25th day of June, 2026;

**ORDERED** that Defendants' motion to compel arbitration (ECF No. 13) is **GRANTED**; and it is further

**ORDERED** that this matter is **STAYED AND ADMINISTRATIVELY TERMINATED** pending the outcome of the arbitration proceedings; and it is further

**ORDERED** that the Clerk's Office is directed to mark this case as **CLOSED**.

**SO ORDERED.**

*s/ Claire C. Cecchi*

**CLAIRE C. CECCHI, U.S.D.J.**